Phil S. Flemming (#014778)
YEN PILCH ROBAINA & KRESIN PLC
6017 North 15th Street
Phoenix, Arizona 85014
Telephone: (602) 682-6450
Facsimile: (602) 682-6455
psf@yprklaw.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Monica Moreno, an individual,<br><br>    Plaintiff<br><br>v.<br><br>Jacobs Technology, Inc., a Tennessee Corporation and a subsidiary of Jacobs Engineering Group, Inc., a Delaware Corporation,<br><br>    Defendant. | No.<br><br>**COMPLAINT**<br><br>**(Violations of Title VII, Arizona Civil Rights Act, and Arizona Blacklisting Statute)**<br><br>**Jury Trial Demanded** |

Plaintiff, Monica Moreno ("Plaintiff"), by undersigned counsel, for her Complaint against Jacobs Technology, Inc. ("Defendant" or "Jacobs") alleges as follows:

**NATURE OF ACTION**

1. This action seeks judgment and remedies for Plaintiff against Defendant Jacobs for unlawful sex discrimination, national origin discrimination, and retaliation, pursuant to Title VII, 42 U.S.C. §§ 2000e, *et seq.*, and the Arizona Civil Rights Act, A.R.S. §§ 41-1401 to 1492, *et seq*. Plaintiff also seeks remedies and judgment for violation of Arizona's blacklisting laws, A.R.S. §§ 23-1361 to 23-1362.

**PARTIES, JURISDICTION AND VENUE**

2. Plaintiff is a United States citizen residing in the Cochise County, Arizona.

3. Defendant Jacobs Technology, Inc. is a Tennessee corporation registered as a foreign corporation to conduct business throughout Arizona, with its statutory agent

located in Maricopa County, Arizona. At all relevant times, Defendant has had at least 15 employees.

4. This Court has proper jurisdiction based upon federal question jurisdiction, under 28 U.S.C. § 1331.

5. This Court also has supplemental jurisdiction over the state law claims, pursuant to 28 U.S.C. § 1367.

6. Venue is found in this District Court, pursuant to 28 U.S.C. § 1391(b)(2), because the events alleged to be unlawful giving rise to the claims occurred in this District.

7. Plaintiff Ms. Moreno timely filed her charge of discrimination and retaliation against Defendant with the Equal Employment Opportunity Commission ("EEOC") and received a Notice of Right to Sue from the EEOC on September 18, 2021.

8. This action is timely commenced within 90 days of Plaintiff's receipt of the EEOC's Notice of Right to Sue.

**FACTUAL ALLEGATIONS**

9. Plaintiff Ms. Moreno is a female whose ethnicity is Hispanic.

10. Defendant hired Plaintiff April 8, 2019, as a Deputy Business Manager. She was a dedicated employee for Jacobs and brought with her prior work experiences in government contracting.

11. Plaintiff worked at the Sierra Vista, Arizona location of Defendant Jacobs.

12. Plaintiff was supervised directly by Mary Hyder, Business Manager, and her second-in-command was Wallace Ricks, Program Manager.

13. Plaintiff experienced several incidents on-the-job where Mr. Ricks made flirty, suggestive comments, sat closely, and even rubbed against her. She learned to keep her distance from him.

14. On one occasion, Plaintiff went to Ms. Hyder's office, that was shared with Mr. Ricks, and Mr. Ricks gave her an overt exaggerated, up-and-down once over "look" that made her feel physically uncomfortable. He told her Ms. Hyder was not there.

///

15. Upon the recommendation of her supervisor Ms. Hyder, Plaintiff applied for an open Business Manager position at the Electronic Proving Grounds in October 2019. Ms. Hyder said the position was similar to Plaintiff's previous work experience.

16. Plaintiff learned that another person had been selected to interview for that open Business Manager position, a Caucasian woman who had no prior government contracting or Business Manager experience.

17. Plaintiff learned the selected interviewee was a good friend of Mr. Ricks who had worked with him at the Sierra Vista Chamber of Commerce, where he was on the Board of Directors and she was facing a lay-off from the Chamber.

18. Plaintiff was disappointed that someone without the qualifications and experiences comparable to her had would be selected to interview for the position after Ms. Hyder had recommended her. She believed the job selection process was unfair.

19. Plaintiff sought to learn more about the Defendant's interview and hiring process and emailed Suzanne Page, the Human Resources Manager, to ask why she had not even been selected for an interview. Ms. Page told her the hiring official had contacted Mr. Ricks to ask about the applicants, including Plaintiff, before deciding who to interview.

20. Plaintiff spoke with her supervisor about the application process and complained she had been treated unfairly and the government contract project harmed. Ms. Hyder said that Mr. Ricks was trying to support the other applicant because she was losing her job at the Chamber of Commerce and it was difficult to find jobs in the small Sierra Vista community. Ms. Hyder also indicated to Plaintiff that because Sierra Vista is a small town, she should be wary about complaining or it "could come back to bite."

21. Knowing that Mr. Ricks had not supported her application and had supported a less qualified Caucasian female for the Business Manager job, Plaintiff began to search for jobs elsewhere that would provide her with a fair opportunity for advancement.

22. When she gave notice of leaving Defendant's employment as of December 13, 2019, Plaintiff reported to the Human Resources Office and to Mr. Ricks and Ms. Hyder that she was leaving because of the unfair treatment from Mr. Ricks with respect to her

application for the Business Manager position.

23. Plaintiff then worked in the field in a new position in Tucson, which was a much less convenient location and not comparable to Sierra Vista.

24. During April of 2021, Plaintiff learned that Defendant had an open position posted for Director of Operations at the Electronic Proving Grounds located in Sierra Vista. She knew she would not have to work with Mr. Ricks so she applied on April 30, 2021.

25. Defendant's recruiter called Plaintiff within 45 minutes of submitting her application and told her she had strong qualifications for the job. He confirmed that she had a security clearance and they discuss her experience, availability, and salary request.

26. Later, April 30, 2021, the recruiter called Plaintiff and reported that the Project Manager was impressed with her qualifications for the job and wanted to know if she had left on good terms from her prior job with Defendant and Mr. Ricks, who he would contact.

27. Plaintiff explained to the recruiter that she had left on good terms but was concerned that Mr. Ricks would not give her a fair review based on his unfair actions when she had worked for Defendant previously and his knowledge that she previously complained about his unfair treatment.

28. On Monday, May 3, 2021, Plaintiff texted the recruiter to ask the status. She feared Mr. Ricks' involvement would ruin her application for the job due to his past sexist behavior and favoritism toward a female Caucasian. Later that day, Defendant sent an email notice telling Plaintiff she was rejected for the job.

29. The abrupt rejection with no interview conflicted with the information provided by the recruiter that he had relayed from the hiring Project Manager being impressed with her qualifications.

30. Plaintiff's qualifications and experiences fulfilled those for the job position for Director of Operations, yet she was unfairly rejected after the Project Manager communicated with Mr. Ricks about her application. Plaintiff spoke with defendant's recruiter and confirmed that the Project Manager had spoken with Mr. Ricks before

rejecting her.  Plaintiff asked that her complaint about the unfair treatment be submitted to Defendant's management, which the recruiter agreed to do.

31. Plaintiff prepared a written complaint to Defendant, Mr. Ricks and Ms. Hyder about the unfair job selection process and the unmerited negative result from Mr. Ricks' involvement.

32. Plaintiff has suffered and continues to suffer financial harms and damage to her personal and professional reputations from the adverse actions of Defendant, by manager Mr. Ricks communicating with other hiring officials to block her applications for jobs in Sierra Vista unfairly.

33. On May 4, 2021 Defendant's Human Resources Operation Liaison, Angela Graham, told Plaintiff her office would "look into" her complaint of being "blackballed."

34. May 13, 2021, Ms. Graham emailed to Plaintiff claiming that Defendant had conducted "a thorough investigation . . . [and] found nothing to substantiate [Plaintiff's claims."

35. This action is timely initiated within 90 days of Plaintiff's receipt of the EEOC Notice of Right to Sue.

36. Plaintiff continues to suffer loss of back pay and benefits, lost front pay and benefits, retirement benefits, harm to her profession and reputation, emotional distress, anxiety, and more. resulting from Defendant's wrongful, unlawful discrimination, retaliation, and blacklisting.

37. Plaintiff seeks, to the extent permitted by law, the full panoply of make whole remedies and, additionally, an award of punitive damages based upon Defendant's egregious wrongful conduct and to deter similar unlawful conduct in the future.

## Claim One:
## Violations of Title VII of the Civil Rights Act of 1964, as Amended

38. Plaintiff incorporates all prior allegations as though fully set forth herein.

39. Title VII, 42 U.S.C. §§ 2000e, *et seq*. prohibits discrimination on the basis of sex and national origin in employment.

40. Defendant is an employer and Plaintiff was an employee within the definitions of Title VII, 42 U.S.C. §§ 2000e(b) and (f).

41. Defendant's actions as alleged constitute unlawful discrimination on the basis of sex and national origin in violation of Title VII, 42 U.S.C. § 2000e-2(a).

42. Defendant unlawfully subjected Plaintiff to discrimination and disparate treatment based on her female sex and her Hispanic national origin, contrary to the prohibitions of Title VII.

43. As a result of the Defendant's unlawful conduct, Plaintiff has been deprived of equal employment opportunities, has been subjected to adverse employment actions and has been denied a fair and equal hiring process on the basis of her sex and national origin.

44. Defendant acted intentionally with malice or reckless indifference to Plaintiff's protected rights under Title VII.

45. Plaintiff initially complained about the unfair process for hiring for the Business Manager position in 2019, and Defendant was aware of this prior protected action.

46. When Plaintiff applied for the new Director of Operations position in April of 2021, Defendant's managers communicated after she was told she was qualified and they rejected her from the interview and hiring process.

47. Defendant rejected Plaintiff from consideration for the Director of Operations position in retaliation for her prior protected activity.

48. As a result of Defendant's unlawful discrimination, Plaintiff has suffered damages, including lost wages and benefits, lost future wages and benefits, retirement benefits, harm to her profession and reputation, emotional distress, anxiety.  She seeks make-whole relief.

49. Plaintiff also seeks recovery of her reasonable attorneys' fees and costs.

### Claim Two:
### Retaliation in Violation of Title VII
### of the Civil Rights Act of 1964, as Amended

50. Plaintiff incorporates all prior allegations as though fully set forth herein.

51. Title VII, 42 U.S.C. § 2000e-3, prohibits retaliation against an employee who has opposed unlawful employment practice or engaged in protected activity under Title VII.

52. Defendant's actions as alleged above constitute unlawful retaliation for Plaintiff's activities protected under Title VII, 42 U.S.C. § 2000e-3.

53. Plaintiff initially complained about the unfair process for hiring for the Business Manager position in 2019, and Defendant was aware of this prior protected action.

54. When Plaintiff applied for the new Director of Operations position in April of 2021, Defendant's managers communicated after she was told she was qualified and they rejected her from the interview and hiring process.

55. Defendant rejected Plaintiff from consideration for the Director of Operations position in retaliation for her prior protected activity.

56. As a result of Defendant's unlawful, retaliatory conduct, Plaintiff has been deprived of equal employment opportunities protected by Title VII.

57. Defendant has acted intentionally with malice or reckless indifference to Plaintiff's protected rights to be free from retaliation under Title VII.

58. As a result of Defendant's unlawful retaliation, Plaintiff has suffered damages, including lost wages and benefits, lost future wages and benefits, retirement benefits, harm to her profession and reputation, emotional distress, anxiety.  She seeks make-whole relief.

59. Plaintiff also seeks recovery of her reasonable attorneys' fees and costs.

## Claim Three:
## Violations of Arizona Civil Rights Act, A.R.S. §§ 41-1461, *et seq.*

60. Plaintiff incorporates all prior allegations as though fully set forth herein.

61. The Arizona Civil Rights Act ("ACRA"), A.R.S. § 41-1463(B)(1) prohibits discrimination in employment and provides it is unlawful for an employer:

> To fail or refuse to hire or to discharge any individual or otherwise to discriminate against any individual with respect to the individual's

compensation, terms, conditions or privileges of employment because of the individual's race, color, religion, sex, age or national origin or on the basis of disability.

62. The ACRA also prohibits an employer from retaliation against an employee for protected actions under the Act.

63. Defendant employed Plaintiff, and she was an employee of Defendant.

64. Based on the allegations above, Defendant engaged in unlawful discriminatory acts against Plaintiff based on her sex and national origin when it unfairly rejected her for the Director of Operations position in April 2021.

65. Defendant's alleged actions also constitute unlawful retaliation for Plaintiff's prior protected activities.

66. Plaintiff initially complained about the unfair process for hiring for the Business Manager position in 2019, and Defendant was aware of this prior protected action.

67. When Plaintiff applied for the new Director of Operations position in April of 2021, Defendant's managers communicated that she was qualified and they rejected her from the interview and hiring process.

68. Defendant abruptly rejected Plaintiff from consideration for the Director of Operations position for which she was qualified, based on her past protected activities.

69. As a result of Defendant's unlawful discrimination and retaliation, Plaintiff has suffered damages, including lost wages and benefits, lost future wages and benefits, retirement benefits, harm to her profession and reputation, emotional distress, anxiety. She seeks make-whole relief.

70. Plaintiff also seeks recovery of her reasonable attorneys' fees and costs

### Claim Four:
### Violation of Anti-Blacklisting Statute, A.R.S. §§ 23-1361 to 1362

71. Plaintiff incorporates all prior allegations as though fully set forth herein.

///

///

72. Plaintiff's former second-level manager Mr. Ricks communicated with the Program Manager for Director of Operations for the position for which Plaintiff had applied.

73. These two managers and Defendant are subject to Arizona's anti-blacklisting statute, A.R.S. § 23-1361(A).

74. These two managers communicated about Plaintiff, as alleged above, to reach an understanding that prevented her being employed in her field of government contracting in Sierra Vista.

75. The managers' communications were not made in good faith to earn a statutory exception. The communications also were contrary to the Federal Acquisition Regulations ("FAR") and the Jacobs Code of Conduct.

76. Based on the Defendant's managers' communications about Plaintiff, she has been effectively blacklisted from employment within the company and within the government contracting field in Sierra Vista, in violation of Arizona's blacklisting law.

77. Plaintiff seeks compensatory damages for her lost wages and benefits, lost future wages and benefits, harms to her profession and reputation, emotional distress, anxiety.

78. Plaintiff also seeks recovery of her reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Ms. Moreno prays for judgment against Defendant Jacobs and awarding her:

A. Compensatory damages to make Plaintiff whole, in the amounts determined at trial;

B. Back pay and lost benefits, with prejudgment interest, in the amounts determined at trial;

C. Injunctive and equitable relief, including front pay and lost benefits in the amounts determined at trial and reinstatement, and requiring Defendant to

institute policies to eradicate unlawful discrimination in sex and national origin in hiring and employment;

D. Declaratory relief finding Defendant violated Title VII, 42 U.S.C. §§ 2000, *et seq.*;

E. Prejudgment and post-judgment interest in the amounts permitted by law;

F. Reasonable attorney's fees, expenses, and expert fees, pursuant to Fed. R. Civ. P. 54 and 42 U.S.C. 2000e-5(k);

G. Taxable costs as the prevailing party;

H. Such further relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial on all matters set forth herein to the extent permitted by law.

DATED this 24th day of September 2021.

YEN PILCH ROBAINA & KRESIN PLC


By     /s/ Phil S. Flemming
       Phil S. Flemming
       Attorneys for Plaintiff